Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ARNOLD NEWMAN, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| FALCON MINERALS CORPORATION, CLAIRE R. HARVEY, WILLIAM D. ANDERSON, ERIK C. BELZ, BRYAN C. GUNDERSON, MARK C. HENLE, ALAN J. HIRSHBERG, ADAM M. JENKINS, and STEVEN R. JONES, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Arnold Newman ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Falcon Minerals Corporation ("Falcon" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Falcon and Desert Peak Minerals ("Desert Peak").

2.     On February 9, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to the Exchange Act in connection with the Proposed Transaction.

3.     The Proxy Statement, which recommends that Falcon shareholders vote in favor of, among other things, the issuance of Falcon common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) Falcon's and Desert Peak's financial projections; (ii) the financial analyses performed by Falcon's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Houlihan Lokey; and (iv) potential conflicts of interest involving Company insiders.

4.     These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

8.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.     Plaintiff is, and has been at all relevant times hereto, an owner of Falcon common stock.

10.    Defendant Falcon acquires and owns mineral, royalty, and over-riding royalty interests in oil and natural gas properties in North America. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "FLMN."

11.    Defendant Claire R. Harvey ("Harvey") is Chairman of the Board of the Company.

12.    Defendant William D. Anderson ("Anderson") is a director of the Company.

13.    Defendant Erik C. Belz ("Belz") is a director of the Company.

14.    Defendant Bryan C. Gunderson ("Gunderson") is President, Chief Executive Officer, and a director of the Company.

15.     Defendant Mark C. Henle ("Henle") is a director of the Company.

16.     Defendant Alan J. Hirschberg ("Hirschberg") is a director of the Company.

17.     Defendant Adam M. Jenkins ("Jenkins") is a director of the Company.

18.     Defendant Steven R. Jones ("Jones") is a director of the Company.

19.     Defendants Harvey, Anderson, Belz, Gunderson, Henle, Hirschberg, Jenkins, and Jones are collectively referred to herein as the "Individual Defendants."

20.     Defendants Falcon and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

21.     On January 12, 2022, Falcon and Desert Peak announced that they had entered into a definitive agreement to combine in an all-stock transaction. The press release announcing the Proposed Transaction states, in pertinent part:

**Desert Peak Minerals and Falcon Minerals Corporation to Combine in $1.9 Billion All-Stock Merger, Creating a Premier, Shareholder Returns-Driven Mineral and Royalty Consolidation Company**

*Combined Company will own over 139,000 Net Royalty Acres, normalized to a $1/8^{th}$ royalty equivalent, over 105,000 of which are located in the Permian Basin*

*Projected to produce approximately 13,500 - 14,500 barrels of oil equivalent per day in 1H 2022 on a combined basis*

**Summary:**

- Combination creates a leading mineral and royalty company in the U.S., positioned to become consolidator of choice for large-scale, high-quality mineral and royalty positions, while returning significant capital to shareholders
- Under the terms of the definitive agreement, Falcon will issue 235 million shares of Class C common stock to Desert Peak's equityholders
- Falcon's existing shareholders will own approximately 27% of the combined company, and Desert Peak's equityholders will own approximately 73%;

transaction is expected to be accretive to Falcon shareholders on a cash flow per share basis for 2022

- Combined company to be managed by the Desert Peak team, and will be headquartered in Denver, Colorado

January 12, 2022 07:45 AM Eastern Standard Time

DENVER & HOUSTON--(BUSINESS WIRE)--Desert Peak Minerals ("Desert Peak") and Falcon Minerals Corporation (NASDAQ: FLMN, FLMNW) ("Falcon") announced today that they have entered into a definitive agreement to combine in an all-stock transaction which values the combined enterprise at $1.9 billion. The combination is expected to create a premier mineral and royalty company at the front end of operators' cost curves, with low leverage, an emphasis on shareholder returns and a significant footprint in the Permian Basin and Eagle Ford.

The combined company will remain focused on consolidating high-quality mineral and royalty positions in the Permian Basin while optimizing its existing asset base. It is positioned to become a leading consolidator in the space through increased scale and an experienced Board of Directors and management team with a track record of consummating large, accretive acquisitions.

**Governance Model and Alignment with Stakeholders**

The combined company will adopt an industry-leading governance and compensation model. The components include a capital allocation model balanced between return of capital to shareholders and reinvestment for growth; aligning management with shareholders through compensation and other factors; a strong balance sheet; a culture of diversity and inclusion; and a commitment to acting as responsible stewards for the environment. Management will not receive cash incentive compensation, and the majority of equity incentive compensation will be determined by absolute total shareholder return over a three-year period.

The combined company will be managed by the Desert Peak team and led by Desert Peak's current Chief Executive Officer, Christopher Conoscenti. Noam Lockshin, a Partner at Kimmeridge, Desert Peak's and the combined company's largest equityholder, will serve as Chairman of the Board of Directors. Following closing, the new Board of Directors will consist of eight members, who are currently expected to be: Noam Lockshin, Christopher Conoscenti, Erik Belz, Allen Li, Claire Harvey, Steven Jones, Morris Clark and Alice Gould.

\*       \*       \*

**Transaction Details**

At the closing, Desert Peak will become a subsidiary of Falcon's operating partnership ("OpCo"). The combined company will retain Falcon's "Up-C"

structure, and Desert Peak's equityholders will receive 235 million shares of Class C common stock, which number shall be adjusted in connection with the reverse stock split described below, with voting rights in the combined company and a corresponding number of limited partner units representing economic interests in OpCo. Desert Peak's equityholders may receive additional equity consideration, subject to certain exceptions, to the extent that, at the closing, Desert Peak's net debt is less than $140 million (based on a $5.15 per Falcon Class A share price).

Upon completion of the transaction, assuming no adjustments to the equity consideration for Desert Peak's net debt, Desert Peak's equityholders will own approximately 73% and existing Falcon shareholders will own approximately 27% of the combined company. Based on the closing price of Falcon's Class A common stock of $5.45 on January 11, 2022, the combined company, including the value of OpCo limited partnership units not owned by Falcon, will have an initial equity market capitalization of approximately $1.76 billion and enterprise value of approximately $1.92 billion, including Class A and Class C common stock.

Immediately prior to the closing of the transaction, subject to the approval of Falcon's shareholders, Falcon will execute a 1-for-4 reverse stock split. After giving effect to the reverse stock split and the proposed merger, the aggregate number of shares of Class A and Class C common stock outstanding is expected to be approximately 80 million shares.

**Transaction Committee**

The combination was approved by a Transaction Committee of Falcon's Board of Directors (the "Falcon Board") comprised solely of disinterested directors, by the Falcon Board and by Desert Peak's equityholders.

The Falcon Board established a Transaction Committee, comprised of independent and disinterested directors Claire Harvey, Chair of the Falcon Board, William Anderson and Steven Jones, for the purpose of evaluating certain strategic alternatives in which affiliates of Blackstone may have an interest, including any potential combination with Desert Peak.

The Transaction Committee was authorized to elect not to pursue the proposed transaction with Desert Peak if it so chose, and the Falcon Board provided that any proposed transaction with Desert Peak would not proceed without the prior favorable recommendation of the Transaction Committee.

**Timing**

The transaction is expected to close in the second quarter of 2022, subject to the approval of Falcon shareholders, certain regulatory approvals and satisfaction of other customary closing conditions. Blackstone, which currently owns 40.6% of the

voting power of Falcon, has entered into a support agreement obligating it to vote in favor of the transaction.

**Advisors**

Barclays is serving as lead financial advisor to Falcon's Transaction Committee, and Houlihan Lokey also served as a financial advisor to the Transaction Committee. Latham & Watkins LLP is serving as Falcon's legal counsel, and White & Case LLP is serving as legal counsel to the Transaction Committee. Vinson & Elkins LLP is serving as legal counsel to Desert Peak and Kimmeridge.

\* \* \*

**About the Companies**

Desert Peak was founded by Kimmeridge, a private investment firm focused on energy solutions, to acquire, own and manage high-quality Permian Basin mineral and royalty interests with the objective of generating cash flow from operations that can be returned to shareholders and reinvested. Desert Peak has accumulated over 105,000 net royalty acres ("NRAs," when normalized to a 1/8th royalty equivalent) through the consummation of over 175 acquisitions to date.

Falcon is an Up-C-Corporation formed to own and acquire high-quality, oil-weighted mineral rights. Falcon owns mineral, royalty, and over-riding royalty interests covering over 21,000 NRAs in the Eagle Ford Shale and Austin Chalk in Karnes, DeWitt, and Gonzales Counties in Texas. The Company also owns over 12,000 NRAs in the Marcellus Shale across Pennsylvania, Ohio, and West Virginia.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Proxy Statement omits and/or misrepresents material information concerning: (i) Falcon's and Desert Peak's financial projections; (ii) the financial analyses performed by Falcon's financial advisor, Houlihan Lokey, in connection with its fairness opinion; (iii) potential conflicts of interest involving Houlihan Lokey; and (iv) potential conflicts of interest involving Company insiders.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Transaction Committee; Approval of the Falcon Board; (ii) Reasons for the Transaction

Committee's Recommendation; (iii) Opinion of Houlihan Lokey Capital, Inc.; and (iv) Certain Unaudited Forecasted Financial Information.

24.      Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Falcon's and Desert Peak's Financial Projections

25.      The Proxy Statement omits material information concerning Falcon's and Desert Peak's financial projections.

26.      With respect to Falcon's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the financial projections; (2) Falcon's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.      With respect to Desert Peak's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the financial projections; (2) Desert Peak's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28.      The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much

weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

29.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

30.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.  Material Omissions Concerning Houlihan Lokey's Analyses

31.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Houlihan Lokey.

32.     With respect to Houlihan Lokey's "*Selected Companies Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Houlihan Lokey observed in its analyses.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 4, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

33.     The Proxy Statement fails to disclose the following concerning Houlihan Lokey's "*Discounted Cash Flow Analysis*": (1) the future pre-tax cash flows associated with the developed and undeveloped reserves expected to be generated from Falcon's and Desert Peak's assets to be developed on a stand-alone, status quo basis, as adjusted for certain corporate expenses, including all underlying line items; (2) the future unlevered post-tax cash flows associated with Falcon and Desert Peak on a stand-alone, status quo basis, including all underlying line items; (3) the terminal exit values for Falcon and Desert Peak; (4) the individual inputs and assumptions underlying the (i) range of multiples to Falcon's estimated 2026 Adjusted EBITDA of 7.00x to 8.00x, (ii) discount rates of 10.5% to 12.5%, and of 9.5% to 11.5%, and (iii) range of multiples to Desert Peak's estimated 2026 Adjusted EBITDA of 8.25x to 9.25x; (5) Wall Street research analyst consensus pricing of Falcon and Desert Peak, respectively; and (6) the New York Mercantile Exchange Strip pricing of Falcon and Desert Peak, respectively.

34.     The valuation methods, underlying assumptions, and key inputs used by Houlihan Lokey in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Houlihan Lokey's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

35.     Without the information described above, the Company's shareholders are unable to fully understand Houlihan Lokey's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.  Material Omissions Concerning Potential Conflicts of Interest Involving Houlihan Lokey

36.     The Proxy Statement omits material information concerning potential conflicts of

interest involving Houlihan Lokey.

37. The Proxy Statement provides that, "[p]ursuant to its engagement by the Transaction Committee, Houlihan Lokey is entitled to a customary fee for its services." The Proxy Statement, however, fails to disclose the amount of compensation Houlihan Lokey received or expects to receive in connection with its engagement.

38. Further, the Proxy Statement fails to disclose the timing and nature of the past services Houlihan Lokey and/or its affiliates provided Falcon, Desert Peak, and/or their affiliates, including the amount of compensation Houlihan Lokey received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

39. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

40. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

41. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

42. The Proxy Statement provides the following concerning the leadership of the combined company following the consummation of the Proposed Transaction:

*Leadership of the Post-Combination Company*

Pursuant to the terms of the Merger Agreement and the Director Designation Agreement, Claire R. Harvey, the Chair of the Falcon Board, and Steven R. Jones, a member of the Falcon Board, are expected to be elected as directors of the Post-Combination Company. In addition, Erik C. Belz, a member of the Falcon Board, is expected to be elected as a director of the Post-Combination Company as the nominee of Royal Resources and Rock Ridge under the Director Designation Agreement. As such, in the future they may receive any cash fees, stock options or stock awards that the Post-Combination Company's Board determines to pay to directors.

43. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## <u>COUNT I</u>
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder <u>Against All Defendants</u>

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of

the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

50.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the

Individual Defendants.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*

16